## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kia Motors America, Inc.,                                    Civil No. 06-156 (DWF/JJG)

                     Plaintiff,

v.                                                           **MEMORANDUM**
                                                             **OPINION AND ORDER**

Autoworks Distributing; Applegate Supply;
Wayzata Nissan, LLC, a Minnesota corporation; and
Mark Saliterman, an individual d/b/a Wayzata
Nissan, LLC, MPA Autoworks, Autoworks
Distributing, and Applegate Supply,

                     Defendants.

_____

David N. Makous, Esq., Isamu H. Lee, Esq., and Paula Greenspan, Esq., Lewis, Brisbois, Bisgaard & Smith LLP; Michael A. Boni, Esq., Norman M. Abramson, Esq., and Kelly W. Hoversten, Esq., Gray, Plant, Mooty, Mooty & Bennett, P.A., counsel for Plaintiff.

H. Kenneth Kudon, Esq., Kudon Law Firm; Kent R. Erickson, Esq., Erickson & Kleypas, LLC; and Gregory J. Johnson, Esq., and Lesley J. Adam, Esq., Johnson, Provo-Peterson, LLP, counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court pursuant to a Second Motion for Partial Summary

Judgment and a Motion for Sanctions Against Plaintiff Kia Motors America, Inc. and

Mark Chaffin for Committing Fraud on the Court brought by Defendants Autoworks

Distributing; Applegate Supply; Wayzata Nissan, LLC, a Minnesota corporation; and

Mark Saliterman, an individual d/b/a Wayzata Nissan, LLC, MPA Autoworks,

Autoworks Distributing, and Applegate Supply (collectively, "Defendants").  Also before

the Court is an Appeal/Objection of the Magistrate Judge's Decision Regarding Order on

Motion for Issuance of Letters Rogatory brought by Plaintiff Kia Motor America, Inc.

("KMA").  For the reasons set forth below, the Court grants in part and denies in part

Defendants' second motion for partial summary judgment, denies Defendants' motion for

sanctions, and denies KMA's appeal/objection.

## BACKGROUND

The background of this action is more fully discussed in the Court's numerous

prior Orders in this matter.  Briefly, Kia Motors Corp. ("KMC"), a Korean company,

distributes Kia products in 180 countries.  KMC is the owner of three United States

trademarks:  (1) KIA Design Logo (Registration No. 2351320); (2) KIA (Registration No.

1723608); and (3) KIA Design Logo (Registration No. 1955539).  Collectively, these

three trademarks are referred to as the "KIA Marks."  KMC has a Distribution Agreement

with KMA, which is a wholly-owned subsidiary of KMC.  Under that agreement, KMA

has the exclusive right to distribute Kia products in the United States and the

non-exclusive right to use the KIA Marks.

In the Spring of 2005, KMA discovered that Defendants were advertising and

offering for sale automobile parts under the KIA Marks that were below dealer net prices.

Defendants advertised these parts as being new and genuine Kia parts.  KMA sought to

stop Defendants' sale of these products and eventually commenced the present action.  In

its Complaint, KMA alleges two counts against Defendants for trademark infringement

under § 32 of the Lanham Act, 15 U.S.C. § 1114(a), and for false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[1]  The parties agree that both of these claims are directed at KMA's contention that Defendants are either selling gray market or counterfeit goods.

## DISCUSSION

### I.     Second Partial Summary Judgment Motion

#### A.     Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in

---

[1]     KMA originally filed, and then later withdrew, a claim for trademark dilution

(Footnote Continued on Next Page)

the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Defendants move for partial summary judgment based on three grounds. The Court will consider each in turn.

### B.  Standing

Defendants first argue that KMA lacks standing to pursue its § 32 claim because it is not a registrant under the Lanham Act. Section 32 of the Lanham Act grants standing to assert a claim for trademark infringement only to the registrant of a trademark. *See* 15 U.S.C. § 1114(1). The term "registrant" includes the registrant and its "legal representatives, predecessors, successors and assigns." *Id.* § 1127. Given this, Defendants assert that KMA has standing to allege its § 32 claim only if KMC, through the Distribution Agreement, granted KMA a complete assignment of its rights in the KIA Marks. An "assignment" of a mark is "an outright sale of all rights in that mark," whereas a license is "a limited permit to another to use the mark." 3 Thomas J. McCarthy, *McCarthy on Trademarks and Unfair Competition* (hereinafter "McCarthy"), § 18:1.

───────────────────────────────

(Footnote Continued From Previous Page)
under 15 U.S.C. § 1125(c).

The parties agree that in certain circumstances an exclusive licensee has standing to sue under § 32.  Such circumstances include where an agreement grants to an exclusive licensee a property interest in the trademark or rights that amount to those of an assignee. *See, e.g., Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 159 (1st Cir. 1977) (discussing instances when an exclusive licensee would qualify as a registrant); *Ultrapure Sys., Inc. v. Ham-Let Group*, 921 F. Supp. 659, 665-66 (N.D. Cal. 1996) (concluding that the grant to the licensee was complete and conferred standing under the Lanham Act); *Etri, Inc. v. Nippon Miniature Bearing Corp.*,  No. 85 C 615, 1989 WL 99575, at *3 (N.D. Ill. Aug. 18, 1989) (same).

When, however, a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark under § 32.  *See Fin. Inv. Co. Ltd. (Bermuda) v. Geberit AG*, 165 F.3d 526, 532 (7th Cir. 1998) (denying standing to exclusive licensee where licensing agreement set forth many duties and rights inconsistent with an assignment, such as geographic limitations on the licensee's territory); *DEP Corp. v. Interstate Cigar Co.,* 622 F.2d 621, 623-24 (2d Cir. 1980) (denying standing to exclusive distributor where agreement expressly stated distributor had no claim of right to mark); *Gruen Mktg. Corp. v. Benrus Watch Co.*, 955 F. Supp. 979, 983 (N.D. Ill. 1997) (holding that licensing agreement was not an assignment where agreement reserved many rights to licensor and stated that licensor was "owner of all right, title and interest in and to [the mark]").  The parties disagree on whether the

5

Distribution Agreement between KMC and KMA grants KMA a sufficient property interest in the KIA Marks such that KMA is a registrant under the Lanham Act.

There is no dispute that KMC registered and is the owner of the KIA Marks and that the Distribution Agreement is the only writing between KMC and KMA pertaining to the KIA Marks. The Distribution Agreement appoints KMA as the "exclusive distributor" of Kia products in the United States and requires KMA "to act as such exclusive distributor, using such Trademarks as [KMC] permits [KMA] to use under Article 5.2."[2] (Defs. Am. Summ. J. Mem. Ex. 2 at 2.1.) Section 6 of the agreement, entitled Distribution of Products, provides:

> Unless agreed separately by written agreement between the parties, [KMC] shall grant [KMA] *the non-exclusive right* to use and authorize Dealers and other third parties to use the Trademarks in connection with the distribution, sale, servicing and marketing of Products.

(*Id*. at 6.2 (emphasis added).) The Distribution Agreement further requires KMA to promptly inform KMC when KMA learns that the KIA Marks may have been infringed, and it requires KMA to challenge any infringement or alleged infringement "in accordance with [KMC's] instructions." (*Id*. at 6.3.) The agreement provides that "[f]urther details pertaining to [KMA's] use of the Trademarks will be, or have been, agreed to in writing by and between [KMC] and [KMA]." (*Id*.) And, the Distribution Agreement further states that KMA may not engage in activities that may adversely affect

---

[2]     The parties agree that the reference to section 5.2 is in err and that the correct reference is to section 6.2.

(Footnote Continued on Next Page)

KMC's reputation or credibility and that KMC and KMA may apportion certain advertising and proportion costs. (*Id*. at 6.4-6.5.)

Based on the above-quoted express language of the Distribution Agreement, specifically section 6.2, Defendants assert that KMA lacks standing to pursue its § 32 claim. In response, KMA focuses on KMC's grant of exclusive distribution rights in the United States, as discussed in section 2 of the Distribution Agreement. KMA explains, "[o]nly KMA may sell KIA products in the United States. Of necessity, that right also bestows upon KMA the exclusive right to use the KIA Trademarks in connection with any sales of the KIA products in the United States." (KMA's Opp'n Mem. at 6; *see also id*. at 23 (explaining position in further detail).) KMA also refers to deposition excerpts and declarations from KMC and KMA employees in which they all agree that KMC and KMA intended for KMA to be granted an assignment in the KIA Marks. KMA further contends that KMC and KMA's course of conduct confirms this interpretation. In addition, KMA explains that section 6.2 discusses a "non-exclusive" license because that section is not limited to the United States and therefore the "non-exclusive" license provision makes sense.

The Court concludes that KMA and KMC's interpretation of their own contract cannot overcome the express language in the Distribution Agreement in which KMC

---

(Footnote Continued From Previous Page)

grants KMA a "non-exclusive license" to the KIA Marks.[3]  Other provisions of the
Distribution Agreement also support the conclusion that KMA received only a license to
use the KIA Marks.  For example, section 6.3 requires KMA to consult with KMC on
how to enforce KMC's rights to the KIA Marks.  Moreover, KMC retained the power to
assure that KMA maintained the quality of the KIA Marks, a requirement consistent with
a trademark license but not an assignment.  *See* 3 McCarthy § 18:44.  In this way, KMA
has not acquired sufficient ownership of the KIA Marks to allow it to be considered a
registrant for the purposes of § 32 of the Lanham Act.[4]  Given this, the Court grants
Defendants' second motion for partial summary judgment with respect to Count I and
dismisses Count I without prejudice for lack of standing.

At this stage, a review of the procedural history in this case is needed.  Beginning
in the Spring of 2006, Defendants informed KMA of their contention that KMA lacked
standing to pursue its § 32 claim.  (*See* Doc. No. 157 (summarizing timeline related to
Defendants' standing arguments.)  In the Court's September 22, 2006 Order, it noted that
KMC's "absence in this litigation is noticeable."  (Doc. No. 86 at 10.)  Under the

---

3     KMA's reliance on *AT&T Mobility, LLC v. NASCAR, Inc.*, 494 F.3d 1356, 1362
(11th Cir. 2007) is misplaced.  While that case did discuss standing, it involved a standing
issue related to a contractual dispute, not a trademark claim under the Lanham Act.

4     In reaching this conclusion, the Court also respectfully rejects KMA's argument
that it is KMC's "legal representative" because the Distribution Agreement does not give
KMA the exclusive right to sue for infringement of the KIA Marks; rather, the agreement
requires KMA to pursue enforcement in accordance with KMC's instructions.

scheduling order in place at that time, KMA—who has presumably always been in

possession of the Distribution Agreement—had until October 1, 2006, to amend its

pleadings to add KMC as a party.  (Doc. No. 44.)  Later, in response to the parties' joint

request, Magistrate Judge Jeanne J. Graham amended the scheduling order and gave the

parties until March 1, 2007, to amend their pleadings to add additional parties.  (Doc.

No. 118.)  KMA, however, failed to add KMC as a plaintiff prior to March 1, 2007.

Then, on May 9, 2007, KMA filed a motion to add KMC as a party.  Defendants opposed

the motion, and Magistrate Judge Graham denied KMA's motion on July 3, 2007.  (Doc.

No. 183.)  KMA never appealed that decision.  And, to date, KMC has never filed a

motion to intervene as a plaintiff in this action.  Given this procedural posture, the Court

notes that it has *sua sponte* considered and rejected the notion of giving KMA leave at

this time to amend its Complaint to add KMC as a plaintiff in this action.

### C.    Gray-Market-Goods Claim

Defendants next argue that KMA may not pursue its § 43(a) gray-market-goods

claim because KMA is a wholly owned subsidiary of KMC.[5]  Gray market or parallel

---

5    Section 43(a) of the Lanham Act prohibits the use of false designations of origins
in connection with goods, services, or their containers that are "likely to cause confusion,
to cause mistake, or to deceive as to the affiliation, connection, or association of [the
maker] with another person, as to the origin, sponsorship, or approval of his or her goods,
services, or commercial activities."  15 U.S.C. § 1125(a).  Unlike § 32(1), which grants a
right of action solely to the registrant of a trademark, § 43(a) permits "any person" who
believes that he or she is likely to be damaged by the proscribed conduct to bring a civil
action.  *Id*.; *see also Silverstar Enters., Inc. v. Aday*, 537 F. Supp. 236, 241 (S.D.N.Y.
1982) (explaining that because § 1125(a) is broader than § 1114, users of trademarks who

(Footnote Continued on Next Page)

imports of goods "refers to a fact pattern in which someone other than the designated

exclusive United States importer buys genuine trademarked goods outside the U.S. and

imports them for sale in the U.S. in competition with the exclusive U.S. importer." 5

McCarthy § 29:46.  Consistent with the first-sale doctrine, which provides that once a

mark owner sells or authorizes goods to be sold bearing its mark it cannot prevent

subsequent owners from reselling the goods with the mark, *see Prestonettes, Inc. v. Coty,*

264 U.S. 359, 368-69 (1924), the sale of gray market goods will not constitute

infringement as long as the imported goods are the same quality as those sold by the U.S.

registrant and the U.S. registrant and foreign manufacturer are related entities.  *See NEC*

*Elec. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987).

KMA does not dispute this point.  (KMA's Opp'n Mem. at 17.)  Rather, it

contends that, despite its relationship to KMC, summary judgment is not proper on its

§ 43(a) gray-market-goods claim because Defendants' goods are materially different than

KMA's goods.  Defendants respond that the material differences test should not apply

when the U.S. trademark holder and the foreign manufacturer are one in the same.  (Defs.

Am. Summ. J. Mem. at 28, n.6.)

The parties did not cite—and the Court could not find—any Eighth Circuit case

---

(Footnote Continued From Previous Page)
are not owners of the marks may have standing to pursue a § 43(a) claim).  Defendants do
not dispute that KMA has standing to assert its § 43(a) claim under either a
gray-market-goods theory or counterfeit-goods theory.

addressing the specific issue of material difference and gray market goods concerning

related entities.  The Court has carefully reviewed the cases cited by the parties and has

conducted its own research concerning gray market goods.  In doing so, the Court finds

McCarthy's summary on gray market goods both instructive and persuasive.  It explains

that almost all courts have adopted the following approach:

> If there are material differences between the gray market imports and the authorized imports, then the gray market imports are not "genuine" goods and can create a likelihood of confusion.  Such material differences evidence the fact that consumer expectation as to the nature of the goods identified by the trademark is not being met.

5 McCarthy § 29:51.75 (internal quotations and citations omitted).  In this way,

> the premise of the "material differences" rule is that the consumer in fact does not get what she expects and does not get the "genuine" product . . . . The unauthorized importer is using the trademark in such a way as to create a likelihood of confusion, mistake and deception, thereby triggering a violation of the Lanham Act.

*Id*.  The material differences rule applies to all Lanham Act claims, regardless of whether

they involve §§ 32 or 43(a).  *Id.*  Moreover, the material difference between the

authorized goods and the gray goods need not be an enormous difference—a single or

small difference is sufficient to trigger a Lanham Act violation.  *Id.* (listing types of

material differences, including differences in aesthetics, labeling, and warranties).

With respect to corporate affiliation, McCarthy explains:

> **Corporate Affiliation**.  Other courts place some weight on whether the designated U.S. importer and the foreign manufacturer are independent or have a corporate affiliation.  This is the view of the Ninth Circuit, which will find no violation if the genuine and gray market goods come from a common source, regardless of whether there are material differences in the

goods.  The better view is that while corporate affiliation is relevant, it is not determinative.  As the Restatement notes, it may be easier for an independent designated U.S. importer to establish itself as a separate source of good will identified by the mark than a wholly owned subsidiary of the foreign manufacturer.

*Id.*[6]

With these principles in mind, the Court concludes that, while relevant, KMC and KMA's relationship should not prevent KMA from proceeding with a gray-market-goods claim at this stage.  Because the focus of all Lanham Act claims is on the prevention of customer confusion and the protection of trademark holders' goodwill, KMA should be allowed to proceed with its claim, assuming it can support its allegation that Defendants' goods are materially different than its own goods such that customer confusion has occurred.  If the goods are indeed different, KMA's claim may prevent the purchasing public from being confused.

KMA asserts that, at a minimum, there is a genuine issue of material fact with respect to whether there are material differences between KMA's goods and Defendants' goods.  For example, KMA points to the lack of a warranty with respect to Defendants' goods.  Defendants respond that the undisputed evidence shows that there are no material differences between their parts and KMA's parts given that:  (1) KMA has not identified

---

6       Interestingly, Defendants successfully sought to transfer this action to this Court from a district court in the Ninth Circuit, thereby removing this action from being bound by Ninth Circuit precedent.  (*See* Doc. No. 1.)

any physical differences between the parts; (2) all the parts use the same numbering and packaging; and (3) all the parts are subject to the standard warranty of merchantability.

Viewing, as it must, the evidence in the light most favorable to KMA, the Court concludes that there are genuine issues of material fact with respect to whether Defendants' goods are materially different than KMA's goods.  *See Perkins Sch. for the Blind v. Maxi-Aids, Inc.*, 274 F. Supp. 2d 319, 324 (E.D.N.Y. 2003) (finding plaintiff had sufficiently alleged a trademark claim based on differences in warranties).  Given this, the Court denies Defendants' motion with respect to KMA's § 43(a) gray-market-goods claim.

### D.    Counterfeit-Goods Claim

Defendants also assert that they are entitled to summary judgment on KMA's § 43(a) counterfeit-goods claim because KMA has produced no evidence to create a genuine issue of material fact concerning whether Defendants' goods are counterfeit.

KMA responds that it has produced such evidence.  It points to an invoice from Defendants showing price quotes not recognized by KMC and another invoice that indicates that the goods sold by Defendants were made in Japan, despite the fact that the parties agree that Defendants' suppliers are not located in Japan.  KMA further points out that at least two of Defendants' suppliers are not recognized as authorized Kia suppliers, that a third supplier is only authorized to sell products inside its country of origin, and

that a final source for parts is from certain Kia dealerships in the United States.[7]  Given this, KMA asserts that there is a genuine issue of material fact with respect to whether at least some of Defendants' parts are counterfeit because the source of Defendants' parts has yet to be traced to a specific supplier.

Defendants reply that KMA's evidence is insufficient to survive summary judgment.  To rebut KMA's proffered evidence, Defendants submit an affidavit by one of their employees in which he explains that the "made in Japan" notation was a clerical mistake.  He reaches this conclusion based on his review of the invoice and the fact that the majority of Defendants' purchases from that particular supplier are for automobiles manufactured by Japanese companies.  Defendants also point out that they stopped doing business with one of their suppliers, who is an authorized Kia supplier, only after KMC entered into an agreement prohibiting that supplier from distributing products outside of its country of origin.

Viewing, as it must, the evidence in the light most favorable to KMA, the Court concludes that there are genuine issues of material fact with respect to whether Defendants' goods are counterfeit and therefore violate § 43(a) of the Lanham Act. Given this, the Court denies Defendants' motion with respect to KMA's § 43(a)

---

7     KMA also argues that Defendants have improperly destroyed evidence, thereby restricting KMA's ability to establish that Defendants' goods are indeed counterfeit.  This argument will be addressed below in connection with Defendants' motion for sanctions.

counterfeit-goods claim.[8]

## II.     Sanctions Motion

Defendants ask the Court to sanction KMA and Mark Chaffin[9]—KMA's Manager

of Parts Information and Parts Systems who also served as KMA's Rule 30(b)(6)

witness—for committing fraud upon the Court by engaging in a pattern of deceit under

oath.  In their motion, Defendants request that the Court dismiss KMA's complaint,

assess monetary sanctions against Chaffin, and require KMA to reimburse Defendants for

their litigation fees and expenses.

Defendants' motion is based on KMA's use of Chaffin's declaration to support

KMA's oppositions to Defendants' first summary judgment motion, motion to dismiss,

and motion for a protective order, and KMA's objection to Magistrate Judge Graham's

Order.  (*See* Doc. Nos. 74, 76, 96, and 121.)  In his declaration and in subsequent

deposition testimony, Chaffin describes how he first learned of Defendants' activities,

what he did to secure some brake pads from Defendants, and how Defendants' brake pads

are different from those that KMA sells.  Defendants assert that KMA knowingly used

Chaffin's statements to initiate this action and to defend against Defendants' four motions

---

8      The Court notes that this conclusion and its conclusion with respect to the
gray-market-goods claim does not equate to a victory at trial or rule out a subsequent
Rule 50 motion.  *See* Fed. R. Civ. P. 50.  To succeed at trial, KMA will have the burden
of establishing all of the elements of its Count II claims, including customer confusion.

9      Although Mark Chaffin is not a party to this action, his attorney attended the
motion hearing and was prepared to address any concerns the Court may have had

(Footnote Continued on Next Page)

when KMA and Chaffin knew that his declaration was not truthful.  To support this argument, Defendants cite to various statements made by a former KMA employee and an independent Kia dealer to refute Chaffin's claims.  They also point out that KMA has no receipts or pictures of the brake pads or other parts in question, despite the fact that KMA-produced documents referring to such photos.  They note that KMA was under a duty to preserve such evidence in light of the current action.

In response, KMA asserts that any inconsistencies between Chaffin's testimony and the other witnesses is simply due to the passage of time between the events that occurred in the Spring of 2005 and when Chaffin submitted his declaration and was deposed.[10]  KMA further asserts that Defendants' filing of the motion is sanctionable because there is no clear and convincing evidence in the record showing that KMA did anything willfully to defraud the Court or engaged in other egregious conduct by not confirming the accuracies of Chaffin's statement, including checking them against third-parties' statements prior to using them in Court.

This motion illustrates just how acrimonious this litigation has become.  Both this Court and Magistrate Judge Graham have repeatedly warned both parties about their allegations and conduct in this matter.  As noted at the motion hearing, in the Court's experience, it is unusual to see such sanctions motions at this stage in the litigation.  The

(Footnote Continued From Previous Page)
concerning Chaffin.
10      While not outcome determinative at this time, the Court is not persuaded by
(Footnote Continued on Next Page)

timing of the motion clearly served to distract the parties from the merits of the summary

judgment motion, something that can hardly be said to serve the best interests of either

party.

The Court takes Defendants' allegations seriously and has carefully reviewed the

record before it, especially considering the basis for its prior decisions in this matter.

However, the fact remains that Defendants' sanctions motion is premature.  Contrary to

their statement at the motion hearing, Defendants were not required to raise these issues

at this stage or risk having the Court conclude that such a motion was untimely.  This

motion raises issues that are more properly considered at the pretrial stage in the form of a

motion in limine to exclude Chaffin's testimony based on lack of foundation, authenticity,

or other evidentiary grounds.  In addition to evidentiary implications, the Court has no

doubt that Chaffin's Declaration may well invite a jury instruction dispute, in the form of

a request for an instruction as to the spoliation of evidence, or a sanctions dispute, in the

form of a motion to preclude KMA from presenting certain testimony as a sanction for

prior conduct.  Indeed, in the Court's experience, these types of issues are most frequently

raised at the pretrial hearing, when the Court typically hears the parties' *in limine*

motions, addresses evidentiary and admissibility of evidence issues, and discusses other

trial administration topics.  Given this, the Court denies at this time Defendants' motion

for sanctions without prejudice.  In so doing, however, the Court reserves the right to

_____

(Footnote Continued From Previous Page)
KMA's failed recall explanation based on the record that is currently before the Court.

impose monetary or other sanctions if Defendants' allegations are further substantiated as the record develops.

## III.   Appeal/Objection of Magistrate Judge's Order

KMA has filed an appeal/objection to Magistrate Judge Graham's September 28, 2007 Order, which denied KMA's request for letters rogatory. Recognizing that KMA had submitted some evidence that Defendants' suppliers may be distributing counterfeit or gray market goods, Magistrate Judge Graham concluded in her September 28, 2007 Order that information regarding whether Defendants are selling counterfeit or gray market parts could possibly be obtained through less burdensome means than letters rogatory served on Defendants' suppliers. [11]   Namely, Magistrate Judge Graham concluded that the information should first be sought through testing of the suspected parts by KMC.  She further noted that Defendants timely submitted an exemplar of parts from their suppliers to KMA but that KMA had submitted nothing in the record to show that testing of those parts was inadequate or had even been completed.

The Court must modify or set aside any portion of a Magistrate Judge's Order

---

[11]   Defendants have disclosed the names of their three foreign suppliers, who are located in two different countries.  Because one supplier—an authorized Kia distributor— is from a country that is not a signatory to the Hague Convention, KMA is limiting the discovery it seeks to discovery from Defendants' two other suppliers.  KMA asserts that these two other supplies are located in a country that is a signatory to the Hague Convention, are owned by the same person, and are not authorized to distribute Kia parts. (KMA Am. Summ. J. Opp'n Mem. at 14.)  Because the identity of the suppliers remains confidential, the Court will not identify the suppliers by name or reference their country of origin.  Instead, the Court will refer to these two related suppliers collectively as "the

(Footnote Continued on Next Page)

found to be clearly erroneous or contrary to law.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R.

Civ. P. 72(a); Local Rule 72.1(b)(2).  This is an "extremely deferential" standard.  *Reko v.*

*Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999).  "A finding is

clearly erroneous when, although there is evidence to support it, the reviewing court on

the entire evidence is left with the definite and firm conviction that a mistake has been

committed."  *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996)

(internal quotations and citations omitted).

KMA asserts that letters rogatory are the only means by which it can conduct

discovery because it is the only way to trace the parts back to Defendants' disclosed

supplier, given that Defendants do not know if the parts they are selling are genuine Kia

parts.  KMA points out that Defendants perform no testing on the parts to determine if

they are genuine; rather, they simply look at the part number and the Kia logo on the

packaging to determine what parts they are selling.  KMA argues that Magistrate Judge

Graham's Order is clearly erroneous because she placed undue emphasis on the burden of

international discovery.  KMA also argues that the record supports its assertion that

KMC's testing of the exemplar parts is and would be inadequate, given that Defendants

cannot and have not produced samples of all of the parts and packaging that KMA wishes

to test from the disclosed supplier.  KMA states in passing that its (or KMC's) testing to

date has "not conclusively revealed counterfeiting."  (KMA's Appeal at 11.)  Yet KMA

---

(Footnote Continued From Previous Page)
disclosed supplier."

submits nothing to support this statement.  Finally, KMA contends that its proposed

letters rogatory are narrowly tailored, and it explains that it has secured foreign local

counsel to help it proceed with its discovery requests from the disclosed supplier once the

Court authorizes it to do so.

In response, Defendants first argue that KMA's appeal is untimely because it is an

improper attempt at a motion to reconsider Magistrate Judge Graham's July 3, 2007

Order.  In that Order, she delayed ruling on KMA's request for letters rogatory until it

could be determined if testing by KMC would be sufficient.  According to Defendants,

"Kia gambled that it could skip the required step of showing that testing was 'not useful'

by arguing that Defendants' exemplar was inadequate.  The gamble failed."  (Defs.'

Opp'n to KMA's Appeal at 3.)  Second, Defendants assert that Magistrate Judge Graham

correctly exercised her discretion under Rule 26 in determining that KMA must first

attempt to obtain the information about the disclosed supplier from testing performed by

KMC.  Defendants assert that KMA's arguments about Defendants' disclosed supplier,

Defendants' record keeping, and the history associated with the selection of exemplar

parts are not supported by the record.  Finally, Defendants reiterate their position that

KMA's lawsuit is merely a fishing expedition to obtain information about various foreign

suppliers in an attempt to shut down the importation of gray market goods.

After reviewing the record, the Court finds that Magistrate Judge Graham's Order

is neither clearly erroneous nor contrary to law.  Magistrate Judge Graham recognized—

and the Court agrees—that the information KMA seeks is relevant.  But she also

concluded, in accordance with Rule 26(b)(2)(C), that the information sought could possibly be obtained in a less expensive and inconvenient manner—namely from KMC. Indeed, in prior filings with the Court, KMA argued that testing by KMC was essential to determine whether Defendants' parts are genuine.  Nevertheless, to date, KMA has failed to produce any evidence to show why an examination of the actual parts themselves or testing by KMC has proven inadequate or is otherwise insufficient.  And, KMA has yet to submit any evidence regarding the actual results of any testing that has been ordered. Given this, the Court denies KMA's appeal and affirms Magistrate Judge Graham's September 28, 2007 Order in all respects. [12]

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Defendants' Second Motion for Partial Summary Judgment (Doc. Nos. 184 and 211) is **GRANTED IN PART** as to Count I and **DENIED IN PART** as to Count II. Count I of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

2.      Defendants' Motion for Sanctions Against Plaintiff Kia Motors America, Inc. and Mark Chaffin for Committing Fraud on the Court (Doc. No. 178) is **DENIED**.

3.      KMA's Appeal/Objection of Magistrate Judge Decision Regarding Order

---

[12]      The parties should be aware that there may be other evidentiary ramifications flowing from the parties' conduct during discovery that are not addressed by this ruling if, for example, the Court later finds that Defendants inadequately supplied exemplars for testing or that either party did not fully cooperate and disclose information directly related to this current discovery dispute.

on Motion for Issuance of Letters Rogatory (Doc. No. 259) is **DENIED**.  Magistrate

Judge Jeanne J. Graham's September 28, 2007 Order (Doc. No. 240) is **AFFIRMED**.


Dated:  December 7, 2007          s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  Judge of United States District Court