UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kia Motors America, Inc.,                                    Civil No. 06-156 (DWF/JJG)

           Plaintiff,

v.                                                              **MEMORANDUM**
                                                                   **OPINION AND ORDER**

Autoworks Distributing; Applegate Supply;
Wayzata Nissan, LLC, a Minnesota corporation; and
Mark Saliterman, an individual d/b/a Wayzata
Nissan, LLC, MPA Autoworks, Autoworks
Distributing, and Applegate Supply,

           Defendants.

_____

David N. Makous, Esq., and Paula Greenspan, Esq., Lewis, Brisbois, Bisgaard & Smith LLP; Michael A. Bondi, Esq., Dicke, Billig & Czaja, PLLC; Norman M. Abramson, Esq., and Kelly W. Hoversten, Esq., Gray, Plant, Mooty, Mooty & Bennett, P.A., counsel for Plaintiff.

H. Kenneth Kudon, Esq., Kudon Law Firm; John T. Williams, Esq., and Laura S. McKay, Esq., Hinkhouse Williams Walsh, LLP, and Gregory J. Johnson, Esq., and Daniel M. Gallatin, Esq., Johnson, Provo-Peterson, LLP, counsel for Defendants.
_____

## INTRODUCTION

The interest of the public in not being deceived is the basic policy of trademark law. *See* 2 Thomas J. McCarthy, *McCarthy on Trademarks and Unfair Competition* (hereinafter "McCarthy"), § 2:1. Although this case is based on trademark law, the parties have paid little attention to the public's interest. And, as Mark Twain once said, "The public is the only critic whose opinion is worth anything at all."

This case is about the sale of allegedly gray market and/or counterfeit auto parts to dealers who then install those parts into Kia cars.  There is nothing in the record concerning whether the public knows that certain dealers may be installing gray market and/or counterfeit parts into Kia cars or concerning the prices the public pays certain dealers for auto parts that may have been purchased at below dealer net.  Instead, Plaintiff Kia Motor America, Inc. ("KMA") asserts that an inquiry into Kia dealer practices would amount to an "attack" on the dealers that would harm "the symbiotic and perhaps fiduciary relationship with the dealers."  (1/27/09 Tr. at 30-31.)  For their part, Defendants Autoworks Distributing; Applegate Supply; Wayzata Nissan, LLC, a Minnesota corporation; and Mark Saliterman, an individual d/b/a Wayzata Nissan, LLC, MPA Autoworks, Autoworks Distributing, and Applegate Supply (collectively, "Defendants") respond that the broader public's interest is irrelevant because the relevant consumer is the dealer, not the car owner.  (*See, e.g.*, Doc. No. 418 at 2.)  But the Lanham Act protects post-sale as well as point-of-sale confusion.  *See Insty*Bit, Inc. v. Poly-Tech Indus., Inc.*, 95 F.3d 663, 672 (8th Cir. 1996).  Therefore, the public's interest is indeed relevant to this case.  Luckily, the public will have access to this information at the trial in this matter, which is set to commence on April 13, 2009.

Currently, this matter is before the Court pursuant to Defendants' Third Motion for Summary Judgment and KMA's Motion for Summary Judgment on Liability.  For the reasons set forth below, the Court denies both motions.

**BACKGROUND**

The background of this action is more fully discussed in the Court's numerous prior orders in this matter. Briefly, Kia Motors Corp. ("KMC"), a Korean company, distributes Kia products in 180 countries. KMC is the owner of three United States trademarks: (1) KIA Design Logo (Registration No. 2351320); (2) KIA (Registration No. 1723608); and (3) KIA Design Logo (Registration No. 1955539). Collectively, these three trademarks are referred to as the "KIA Marks." KMC has a Distribution Agreement with KMA, which is a wholly-owned subsidiary of KMC. Under that agreement, KMA has the exclusive right to distribute Kia products in the United States and the non-exclusive right to use the KIA Marks.

In the Spring of 2005, KMA discovered that Defendants were advertising and offering for sale automobile parts under the KIA Marks that were below dealer net prices. Defendants advertised these parts as being new and genuine Kia parts. KMA sought to stop Defendants' sale of these products and eventually commenced the present action. KMA has one remaining count in its original Complaint, specifically a claim for false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[1] The parties agree that this claim is directed at KMA's contention that Defendants are either selling gray market or counterfeit goods.

---

1    KMA originally filed, and then later withdrew, a claim for trademark dilution under 15 U.S.C. § 1125(c). In addition, the Court previously dismissed for lack of standing a claim for trademark infringement under § 32 of the Lanham Act, 15 U.S.C.

(Footnote Continued on Next Page)

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

---

(Footnote Continued From Previous Page)
§ 1114(a).  *See* Doc. No. 279.

Defendants move for summary judgment based on four grounds, and KMA moves for partial summary judgment on the issue of liability with respect to the gray market goods claim. The Court will consider each in turn.

## I.   Standing

In connection with their second summary judgment motion, Defendants did not dispute that KMA had standing to assert its § 43(a) claim under either a gray-market-goods theory or counterfeit-goods theory. (Doc. No. 279 at 9-10, n.5.) Now, without citing any case law concerning standing, Defendants argue that KMA lacks standing to pursue its § 43(a) claim because "KMA lacks the requisite belief required for KMA to maintain an action under § 43(a) of the Lanham Act." (Doc. No. 418 at 2.) The basis of Defendants' argument is that KMA has not demonstrated that it has a reasonable belief that it is likely to be damaged, given (1) Defendants' assertion that their parts and KMA's parts are not materially different and (2) Defendants' assertion that KMA has failed to present sufficient evidence to support a claim of counterfeiting.[2]

Section 43(a) of the Lanham Act prohibits the use of false designations of origins in connection with goods, services, or their containers that are "likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of [the maker] with another person, as to the origin, sponsorship, or approval of his or her goods,

---

[2]   Defendants also assert that KMA's failure to notify KMC that KMA believed that KMC's trademarks were being infringed, as required by the Distribution Agreement between KMC and KMA, demonstrates that KMA lacks the requisite belief to maintain a
(Footnote Continued on Next Page)

services, or commercial activities." 15 U.S.C. § 1125(a). As discussed in the Court's prior Order, § 43(a) permits "any person" who believes that he or she is likely to be damaged by the proscribed conduct to bring a civil action. *Id.*; *see also Silverstar Enters., Inc. v. Aday*, 537 F. Supp. 236, 241 (S.D.N.Y. 1982) (explaining that because § 1125(a) is broader than § 1114, users of trademarks who are not owners of the marks may have standing to pursue a § 43(a) claim). The Court finds Defendants' standing argument to be without merit. It will address Defendants' arguments with respect to the gray market goods and counterfeiting claims below.

## II.     Gray Market Goods

Defendants next move for summary judgment on KMA's gray-market-goods claim, asserting that there are no material differences between KMA's parts and Defendants' parts. KMA cross moves for summary judgment on this claim, asserting that it is entitled to partial summary judgment on the issue of liability because the material difference between the parties' parts creates a presumption of customer confusion that Defendants have failed to rebut.

Gray market or the parallel import of goods "refers to a fact pattern in which someone other than the designated exclusive United States importer buys genuine trademarked goods outside the U.S. and imports them for sale in the U.S. in competition with the exclusive U.S. importer." 5 McCarthy § 29:46. Consistent with the first-sale

---

(Footnote Continued From Previous Page)
§ 43(a) claim. It is unclear how this argument supports any standing argument.

doctrine, which provides that once a mark owner sells or authorizes goods to be sold bearing its mark it cannot prevent subsequent owners from reselling the goods with the mark, *see Prestonettes, Inc. v. Coty,* 264 U.S. 359, 368-69 (1924), the sale of gray market goods will not constitute infringement as long as the imported goods are the same quality as those sold by the U.S. registrant and the U.S. registrant and foreign manufacturer are related entities.  *See NEC Elec. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987).  McCarthy explains, however:

> If there are material differences between the gray market imports and the authorized imports, then the gray market imports are not "genuine" goods and can create a likelihood of confusion.  Such material differences evidence the fact that consumer expectation as to the nature of the goods identified by the trademark is not being met.

5 McCarthy § 29:51.75 (internal quotations and citations omitted).  Therefore, "a material difference between goods simultaneously sold in the same market under the same name creates a presumption of consumer confusion as a matter of law." *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992).  In this way,

> the premise of the "material differences" rule is that the consumer in fact does not get what she expects and does not get the "genuine" product . . . . The unauthorized importer is using the trademark in such a way as to create a likelihood of confusion, mistake and deception, thereby triggering a violation of the Lanham Act.

5 McCarthy § 29:51.75 (internal quotations and citations omitted).  The material differences rule applies to all Lanham Act claims, regardless of whether they involve §§ 32 or 43(a).  *Id.*  The material difference between the authorized goods and the gray

goods need not be an enormous difference—a single or small difference is sufficient to trigger a Lanham Act violation. *Id.* (listing types of material differences, including differences in aesthetics, labeling, and warranties).

The typical multi-factor likelihood-of-confusion tests used for trademark claims is not useful in the context of gray market goods because such goods typically use the exact same market, sold in the original packaging. *Novartis Animal Health U.S., Inc. v. Abbeyvet Export Ltd.*, 409 F. Supp. 2d 264, 266 (S.D.N.Y. 2005). Therefore, courts have adopted a simpler, two-part test to determine if likelihood of confusion exists in a gray market goods context: (1) were the goods not intended to be sold in the United States; and (2) are they materially different from the goods typically sold in the United States? *Id.* Once a plaintiff establishes a material difference, the burden shifts to the accused infringer to establish by a preponderance of evidence that the difference is not the kind that consumers, on average, would likely consider in purchasing a product. *Societe Des Produits Nestle*, 982 F.2d at 641.

Here, there is no dispute that Defendants' goods were not intended to be sold in the United States. Previously, the Court rejected Defendants' argument that there were no material differences between the parties' parts and denied Defendants' second motion for summary judgment on that issue.[3] (Doc. No. 279 at 12-13.) Defendants again move for

---

3   In that same Order, the Court rejected Defendants' argument that KMA could not pursue its § 43(a) claim because KMA was a wholly owned subsidiary of KMC. (Doc. No. 279 at 9-12.)

summary judgment, asserting that there is no material difference between their parts and KMA's parts because there are no material differences between Defendants' parts return policy and KMA's warranty. Specifically, Defendants contend that both parties offer essentially the same type of parts return policies and they assert that a KMC, not a KMA, warranty expressly covers all genuine Kia replacement parts, regardless of where or from whom the dealer purchased the parts. KMA responds that it has established as a matter of law a material difference between Defendants' parts and KMA's parts because a plain reading of KMA's warranties shows that they do not extend to parts sold by Defendants.

There is no dispute that the question of a warranty's coverage is a question of contract interpretation for the Court to decide. *See Swatch S.A. v. New City, Inc.*, 454 F. Supp.2d 1245, 1250 (S.D. Fla 2006) (examining alleged differences in warranties and explaining question of warranty coverage is a question of law for the court). Defendants recently began offering a limited parts replacement warranty for their parts which are damaged but have not yet placed in any automobiles. In contrast, KMA offers three types of warranties with the cars and parts it sells: (1) a basic warranty, (2) a power-train warranty; and (3) a genuine Kia replacement parts and accessories warranty. After carefully reviewing the parties' warranties, the Court concludes as a matter of law that the KMA warranties are unambiguous. Specifically, the Court concludes that the KMA warranties cover genuine Kia new or remanufactured replacement parts and Kia Accessories purchased from KMA and sold by an Authorized Kia Dealer. (*See* Doc. 424, Exs. A-F.) As explained earlier, a single or small difference is sufficient to trigger a

Lanham Act claim. 5 McCarthy § 29:51.75. Based on the foregoing, the Court concludes that KMA has met its burden of establishing that there is a material difference between KMA's parts and Defendants' parts, namely the material difference is that Defendants' parts lack KMA's warranty. Given this, the Court denies Defendants' motion with respect to the § 43(a) gray-market-goods claim.

Now, the burden shifts to Defendants to establish by a preponderance of evidence that the difference is not the kind that consumers, on average, would likely consider in purchasing a product. *Societe Des Produits Nestle*, 982 F.2d at 641. KMA seeks partial summary judgment on this issue, asserting that Defendants cannot meet their burden of establishing that the differences in the parties' warranties are not the kind that consumers, on average, would likely consider in purchasing a product. Defendants respond that the warranty difference is not relevant because dealers are not confused about the parties' differences in warranties because Defendants take explicit steps to ensure that dealers know that they cannot receive warranty reimbursement or credit from KMA for parts dealers purchase from Defendants. The crux of Defendants' argument is that the dealers are the only relevant consumers, not the end users or car owners, and that there is no evidence in the record to show that there is any confusion by the dealers about the parties' warranties.

Viewing the evidence in the light most favorable to Defendants, the Court concludes that there are genuine issues of material fact with respect to whether Defendants have met their burden. Defendants' arguments assume, without supporting

10

case law, that the only relevant consumers are the dealers. End-users or car owners, however, may very likely find the differences in the parties' warranties to be relevant when they are purchasing replacement parts. *See, e.g., Hyundai Constr. Equip. U.S.A., Inc. v. Chris Johnson Equip., Inc.*, No. 06 C 3238, 2008 WL 4210785, at *3 (N.D. Ill. Sept. 10, 2008) (granting summary judgment in favor of plaintiff by explaining that defendant's warning to his customers about the products would not protect subsequent customers who may purchase the equipment from the defendant's customers). Given this, the Court denies KMA's motion with respect to the § 43(a) gray-market-goods claim.

### III.   Counterfeit Goods

Asserting that additional facts have been discovered since Defendants' second summary judgment motion in which the Court denied Defendants' motion for summary judgment on KMA's counterfeit-goods claim, Defendants now contend that they are entitled to summary judgment on KMA's § 43(a) counterfeit-goods claim because KMA's evidence "at this stage of the case" is "too thin and vague" to create a genuine issue of material fact concerning whether Defendants' goods are counterfeit. (Doc. No. 418 at 20-22.)  KMA responds that it has produced such evidence to survive a summary judgment motion and that Defendants' third summary judgment motion on this issue is merely a motion to reconsider in disguise. KMA explains that Defendants' argument is based on the faulty premise that KMA's failure to test the exemplars somehow raises a presumption that Defendants' parts are genuine. The parties then

rehash arguments concerning the exemplars and evidentiary ramifications that flow from the testing or lack of testing of the exemplars.[4]

The Court has thoroughly reviewed all evidence and arguments submitted in connection with this motion. Viewing the evidence in the light most favorable to KMA and noting the absence of new evidence since the second summary judgment motion, the Court concludes that genuine issues of material fact remain with respect to whether Defendants' goods are counterfeit and therefore violate § 43(a) of the Lanham Act. Given this, the Court denies Defendants' motion with respect to KMA's § 43(a) counterfeit-goods claim. The Court, however, strongly reiterates its admonition to KMA that this conclusion does not equate to a victory at trial or rule out a subsequent Rule 50 motion. *See* Fed. R. Civ. P. 50. To succeed at trial, KMA will have the burden of establishing all of the elements of its § 43(a) counterfeit-goods claim. On the record before the Court, that will likely prove to be a difficult task for KMA. In advance of the pretrial conference and the trial, KMA should consider how best to streamline and present its evidence to the jury on the counterfeiting claim.

---

[4] In connection with these arguments, Defendants and KMA filed several objections and/or motions to strike documents and declarations that were submitted in connection with the summary judgment motions. As the Court noted at the motion hearing, the arguments submitted in connection with the objections would more properly be presented as motions in limine at the pretrial conference. For this reason, the Court will deny all objections/motions to strike without prejudice.

**IV.     Disgorgement of Profits**

Defendants seek partial summary judgment on the issue of disgorgement of profits because they assert that KMA has failed to put forth any computation, as required by Federal Rule of Civil Procedure 26(a), of Defendants' sales on which it will base its claim for profits.  In the alternative, Defendants seek a ruling from the Court that KMA only be allowed to seek profits realized after July 6, 2005, the date KMA commenced this lawsuit, because KMA has not produced evidence prior to that date that the Kia parts or packaging were marked with the Kia Marks.  KMA responds that it is relying on documents produced by Defendants to support its claim for profits and that if Defendants believe that those documents are incomplete, it is Defendants' fault, not KMA's fault.  KMA does not specifically respond to Defendants' argument about whether the Kia parts were marked with the Kia Marks prior to July 6, 2005.  As the Court discussed at the motion hearing, this issue is more properly addressed at the pretrial conference when the Court will make rulings that will likely have serious dispositive evidentiary ramifications for both parties.[5]  Accordingly, the Court denies at this time Defendants' summary judgment motion with respect to the disgorgement of profits.

---

5      At the trial, the Court anticipates that it will also make rulings that will have serious dispositive evidentiary ramifications on both sides' positions with respect to the gray-market-goods and counterfeiting claims.  The Court hopes that the parties consider these ramifications both in preparing for trial and in any settlement discussions they may be having.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Third Motion for Partial Summary Judgment (Doc. No. 417) is **DENIED**.

2. KMA's Motion for Summary Judgment on Liability (Doc. No. 421) is **DENIED**.

Dated: February 26, 2009		s/Donovan W. Frank
			DONOVAN W. FRANK
			Judge of United States District Court